Jessup v. Cook.

[SEPTEMBER TERM, 1798.]

## JESSUP *against* COOK.

A payment subsequent to the filing of the declaration will not constitute a ground of action.

One of the two obligors in a bond, may give in evidence in an action against the other, receipts endorsed upon the bond, but they will not charge the defendant without other proof.

An account proved to be in the hand-writing of one partner, is evidence to go to the jury in an action between the parties, though it is not signed.

A culpable neglect in one partner in pursuing the claims of the concern may render him liable to the other partner for the amount which has been lost by his neglect: but he is only obliged to take the same care of the partnership business as of his own.

Evidence taken before arbitrators, not admissible in a court on a trial of the same cause, though the witness be dead.

In order to entitle a party to a new trial, on the ground of newly discovered evidence, such evidence must be important, and shew that injustice has been done.

*Query.* Whether are affidavits of jurymen admitted to shew the principles upon which they founded their verdict?

This was a rule to shew cause why a new trial should not be had, on the ground that defendant had discovered new and important evidence since the trial.

The case had been tried at *Nisi Prius*, in Gloucester county, in June, 1796, before KINSEY, C. J. and CHETWOOD, J.

It was an action of *indebitatus assumpsit*, and the declaration contained seven counts. 1. *Indeb. ass.* for goods sold and delivered. 2. *Quantum meruit* for the same. 3. A special court which stated that on the 15th of June, 1784, in consideration that Jessup had entered into an obligation to one Taylor, as security for Cook, in the penalty of £392 10s., conditioned for the payment of £196 5s., Cook under-

took to pay Jessup all the moneys which he might pay on this bond; and an averment that he had paid £196 5s. and interest, on the 16th of June. 4 *Indeb. ass.* for £600 money lent and advanced. 5. *Indeb. ass.* for £600 laid out and expended. 6. *Insimul computassent.* 7. *Indeb. ass.* for money had and received.

The defendant pleaded—1. *Non assumpsit.* 2 *Non assumpsit*, except as to seven shillings, and as to that, payment.

For the plaintiff, the bond to Taylor was given in evidence, which appeared to be in the penalty of £392 10s., conditioned for the payment of £196 5s. with interest, in one year. The execution was proved by one of the subscribing witnesses. On this bond, several payments were endorsed between the date of the 19th of December, 1786, and one payment subsequent, for £83, being the balance then due, dated 1st May, 1789.

*Leake*, for defendant, objected to this evidence, as the receipt was subsequent to the commencement of this action, and to the filing of the declaration, which was in November, 1788. The bond has been admitted in evidence, but we are not precluded from objecting to any part of the instrument which is not legal testimony. *Johnson* v. *Horker*, 1 *Dal.* 406.

Evidence of a cause of action, arising after the institution of the suit, is inadmissible. 1 *Com. Dig.* 1423, *title Action E. Foster* v. *Bonner, Cowp.* 454.

*Per Curiam* The receipt in 1789, no evidence to support a *narr.* of November term, 1788; a payment subsequent to the *placita* is not evidence.

*Leake* objected, that Jessup himself, being one of the obligors in the bond, he could not offer receipts signed by the obligee to charge the other obligor.

*Per Curiam.* The evidence is unquestionably proper; it cannot certainly, of itself, have the effect of charging Cook, and unless the plaintiff shews further, that he executed this bond merely in the character of surety, and that these payments were made by him, they will not be of much importance in this suit. The possession of the bond is a circumstance of some weight, and that, with the receipt, is evidence that the bond has been satisfied.

The plaintiff, after stating that Jessup and Cook had been partners; that Cook bought Taylor out, offered an account in Cook's hand-writing, at the dissolution of their connection, stating himself indebted £314 6s.

*Leake* objected to the account. This is an action of *indebitatus assumpsit*, and it is improper to go into an examination of partnership accounts. The proper remedy in cases, between partners, is by action of account render, which though much disused in England, is still the only common law remedy. *James* v. *Browne*, 1 *Dal. Co. Lit.* 172, *a.* The account is not settled between the parties; it is one of them alone, and though *assumpsit* may be supported upon an account which has been struck, (*Foster* v. *Allanson*, 2 *Term Rep.* 479) yet this case is wholly different. Here the different subjects of this suit are, for the first time, brought together by the plaintiff himself, and only in his declaration : the defendant has not committed himself so far as to warrant an action of *assumpsit*.

*Per Curiam.* The question is, whether this account shall go to the jury, as evidence likely to throw light upon the case ? not, what inferences they may legitimately draw from it. Nothing further can be requisite to ensure a proper decision of this question than a plain statement of the fact which it involves, and of the truth of which there seems to be no sort of question.

Two persons become connected as partners in business, and, after some time, the partnership is dissolved. One of

the parties draws out the account of the sales and different matters of business, and states a balance against himself: unquestionably in a case where both have authority to receive, and did receive, where the transactions are in a great measure secret, and known only to themselves, this is evidence to go to a jury, and tends to shew that this is the true situation of the accounts between them, at least as against the person who has stated it, and that he is indebted to this amount to the concern.

It is objected, that this account is not a stated account, because not signed by both. Signing is, we think, not essential, in every case, to make it a stated account. As this paper now stands, in the hand-writing of the defendant, we think it evidence on the count for money had and received, or money paid, laid out, and expended, or *insimul computassent.*[*]

With regard to the objection, that the action should have been account render, it may be observed, that this is not a time nor a manner to take advantage of a. defect of this kind, if it really be one. But the action of account render is tedious, and expensive : the same ends may be attained in a court of chancery, where the accounts are so involved and complex as to be unfit for the examination of a jury, and whenever they are plain and intelligible I should be disposed to favor this mode of settling differences. The action of account render has almost become obsolete in England ; the forms are intricate, and the books of practice throw so little light upon the manner of conducting it, that our most experienced practitioners would find themselves involved in difficulties should they undertake to pursue this remedy. From these causes, or from others, the fact is, that I have never known an action of account brought in this state during the whole of my practice.

---

[*] See this principle decided in 2 *Atk.* 252; 2 *Cain. N. Y. Rep.* 297; *Wats. on Partnership* 410.

On the whole, we can anticipate no injurious consequences from receiving evidence of this kind, there being little reason to apprehend injury from a partner stating an account falsely against himself.

Evidence admitted.

An attempt was made to prove the plaintiff responsible for £802 3s. which was charged in the partnership books to one Clinton. 1. On the ground that it was a private account between Jessup and Clinton. 2. That the partnership accounts and books, after the dissolution of the connexion, remained in Jessup's hands; that he had opportunities of suing Clinton, which were neglected, and that the debt was lost in consequence of this omission.

*Per Curiam.* The first question is one of fact, for the consideration and decision of the jury. With regard to the second, there are duties owing from one partner to another, and neglect in their performance may, in some cases, be so far culpable as to render him who has been neglectful liable for the consequences of it. If it was proved that the plaintiff had been informed that Clinton was in bad circumstances; that the partnership was in danger of losing the debt, is he to be allowed to keep the books in his possession for near two years without taking a step to recover the money?

In this case it is proved that Jessup took the books; that he now has them, and this is evidence to shew that they have been in his possession during the interim. But this alone does not render him liable. There is evidence that he actually exerted himself, and with some effect, to recover the money; that he attached Clinton's property and obtained upwards of £70. Previous to these steps being taken, there is reason to believe, from the evidence, that he entertained no suspicions or distrust, and on the whole, though we think the evidence admissible, we are far from thinking that it establishes the fact which it is designed to prove, or that he has taken less care of the partnership concerns than a prudent man would do of his own.

To prove the fact that the credit given to Clinton was given by Jessup personally, the defendant offered to read the testimony of a witness who had been examined on a previous investigation of the cause before arbitrators, from notes of his testimony taken by one of the arbitrators.

It was objected to by the plaintiff.

*Per Curiam.* The evidence is inadmissible. The arbitrators were not called upon to take down the testimony of the witness, and probably took down only what was necessary for illustration. They did not constitute a court; their authority was created by consent, and this consent never authorized them even to administer an oath to a witness. This is the first time, we believe, that this kind of testimony was ever offered, and we are not disposed to establish a precedent.

Evidence rejected.

KINSEY, C. J., charged the jury. This is an action of *assumpsit*, brought by one partner against another, and the action is founded upon the fact, that on a fair settlement of the accounts between the parties a balance has been found due to the plaintiff equal to the amount claimed.

It may be important, in adjusting the balance between the parties, to understand the real legal doctrine upon a point that has been raised. It is contended that the plaintiff ought to be answerable for the debt lost by the insolvency of Clinton. If it had been proved that Jessup knew that his circumstances were precarious, and that Cook had informed him of the danger, that he himself was unwilling to give him further credit, and that if it was done Jessup should be personally responsible, there would have been some color for the doctrine which has been held. Nothing of this kind, however, has appeared in evidence. The general rule of law is, that a partner is bound to take the same care of the concerns of the partnership as of his own. 1

*Domat.* 157. *Dig.* 1, 72. Cases have been cited to shew what shall be deemed gross neglect in the mercantile law, upon bills of exchange, so as to incur or remove a responsibility, but they are wholly foreign to a case of this kind between parties. You are to determine from the circumstances of the case, and the evidence that has been laid before you. 1. Whether the debt due from Clinton was a partnership concern? 2. Whether it was lost by the culpable negligence of the plaintiff?

Verdict for the plaintiff, £138 7*s.* 6 1-4*d.* and 6*d.* costs.

A rule had been obtained by *Leake,* for defendant, to shew cause why a new trial should not be had, on the ground that defendant had discovered important and new evidence since the trial.

The affidavit of one Blackwood was read, who stated a conversation between himself and Jessup, in which he understood Jessup to say, that the credit given to Clinton was on his own account; that he, (not they, the partners) expected to receive the amount from Clinton.

The affidavit of one of the jurymen was offered, stating that the jury, in making up the verdict, divided the debt due from Clinton between the partners.

*Stockton* shewed cause, and cited *Palmer* v. *Crowle, Andrews* 382; *Clark* v. *Stevenson,* 2 *Bl. Rep.* 803; *Vaise* v. *Delaval,* 1 *Term. Rep.* 11; *Jackson* v. *Williamson,* 2 *Term. Rep.* 281; 5 *Bur.* 2667; 2 *Tidd* 811, 817, to shew, that after a general verdict, the court will never receive the affidavit of a juryman to prove the grounds upon which the verdict was founded, or that the jury was guilty of any irregularity or improper conduct.

*Leake,* contra. The cases which have been cited are inapplicable: the intent of the affidavit is not to criminate any one, but to shew the grounds upon which the jury pro-

Jessup *v.* Cook.

ceeded, and then to shew that they were mistaken. The court will, under special circumstances, grant new trials on the affidavits of the jurors, that the verdict was taken contrary to their meaning. 1 *Sellon's Prac.* 488; *Rex* v. *Simmons,* 1 *Wils.* 329. In *Cogan* v. *Ebden,* 1 *Bur.* 383, Lord Mansfield recommended the counsel to take a rule to shew cause why, upon the affidavits of some of the jury, a verdict should not be amended. This would scarcely have been done, had any doubts existed as to the propriety of receiving the affidavits of jurymen.

KINSEY, C. J. The affidavit of the juryman, which is offered in this case, does not go to impeach the conduct of the jury, or to shew that, as the case actually stood before them, they were guilty of any impropriety, nor to vary its terms or operation. Its object is to shew, that a party at the trial was precluded from the benefit of evidence which might have made a material alteration in his case. I do not think the fact can be got at in any other manner, and I cannot anticipate any evil consequences when the question was actually argued at the trial, and when it is impossible for their verdict to be as it was upon any other principle.

SMITH, J. concurred.

KIRKPATRICK, J. and BOUDINOT, J. thought the evidence inadmissible; and the court being divided it was not read.*

*Leake.* From the charge of his honor, the Chief Justice, at the trial, the same fact appears, and the question is, whether the affidavit of Blackwood is sufficient to authorize the court to set aside this verdict?

It appears that the jury actually thought that the loss ought to be equally apportioned between the two partners;

---

* See 1 *Pen. Rep.* 389, where this point is thus ruled.

Jessup *v.* Cook.

this is working injustice to the defendant, if, as appears
from the acknowledgments of Jessup himself, the debt was
a private one, in which Cook had no interest.

In *Broadhead* v. *Marshall*, 2 *Bl. Rep.* 955, a new trial
was granted on the discovery of evidence, which, at the time
of the trial, was actually in the possession of the defendant's
attorney, he not knowing of it. In *Norris* v. *Freeman*, 3
*Wils.* 38, the court say, there are many cases in which new
trials will be granted notwithstanding there was evidence
on both sides, as where *all the light* has not been let in at
the trial, which might and ought to have been. In *Gryle*
v. *Gryle*, 1 *Atk.* 176, the Lord Chancellor says, that the dis-
covery of new matter, after making a decree, furnishes a
sufficient ground for allowing a review, though such mat-
ter was in existence at the time, if it was not known by
the party until afterwards. In the *Countess of Gains-
borough* v. *Gifford*, 2 *P. Wms.* 424, the master of the
rolls stated, that if a plaintiff recovers a debt against
defendant, and defendant afterwards finds a receipt under
the plaintiff's own hand for the money in question, the
verdict will be relieved against. The same doctrine is
established in *Taylor* v. *Sharp*, 3 *P. Wms.* 371, where
the Lord Chancellor considers the discovery of new mat-
ter as a sufficient ground for a bill of review. *Hinde's
Chan.* 56–7 ; Lord Hardwicke (1 *Vez.* 434, 435) con-
siders it as sufficient to shew that the new matter is rele-
vant. This is sanctioned in *Lewellin* v. *Mackworth*, 2 *Atk.*
40, which shews that it is not necessary, in a case of this
kind, that the evidence should be positive and certain, but
merely such as the court may think reasonable. *Hinde* 57.
The true rule, in all applications for new trials, is that which
is cited by Lord Mansfied, (1 *Bur.* 395) as the doctrine
established by Lord Parker, " doing justice to the party, or
attaining the justice of the case."

Again, the jury, in their verdict, went clearly without
evidence in one respect. They divided the loss equally

between the partners, when there was no proof that the amount of their interests in the stock was the same. The true rule in apportioning a loss, is to ascertain the respective shares of the different persons interested; it should be apportioned on the stock, not on the partners. *Watson's Law of Partnership* 40. *Paley's M. P.* 125. *Puff. l.* 5, *c.* 8, *fol.* 278–9.

*Stockton,* contra. The evidence which is said to have been discovered since the trial, is not sufficient to warrant the court in setting aside a verdict. The materiality of the evidence ought to go to the whole case, and not to be confined to a particular item of account, which might or might not have been considered. The case cited from *Black. Rep.* is a case of one in which the evidence discovered went to the whole of the plaintiff's claim, shewed that it was founded in gross fraud or palpable mistake.

In *Norris* v. *Freeman,* the jury found against the opinion and direction of the court, and there were many circumstances in that case which seemed to call for the interposition of the court, by granting a new trial to preserve the rights of the party from being violated. The cases cited from the equity courts are wholly inapplicable; chancery does not proceed according to the same rules which govern courts of common law. 2 *Atk.* 320.

It is always necessary, when an application is made for a new trial on this ground, to satisfy the court, not only that the evidence is material, but that it has been discovered, or come to the knowledge of the party since the trial. This is a fact which ought not to rest in conjecture or inference, but, being a pre-requisite, it must be proved by legal and unobjectionable testimony. The party himself, in his affidavit, has stated this circumstance, but there is no intimation of it in the affidavit of Blackwood. If the fact is a material one, and it has always been deemed to be all important, to grant a new trial upon the mere unsupported evidence of the

party himself, would be to run counter to the most familiar principles of the law, and open a channel of fraud, and hold out temptations to perjury which would lead to the most frightful consequences.

It is further incumbent upon the party, to prove that this evidence could not have been discovered or procured at the trial, by at least ordinary diligence. Wherever the party might have been prepared, the court has uniformly rejected the application. *Price* v. *Brown*, 1 *Str.* 691; *Cooke* v. *Berry*, 1 *Wils.* 98.

Nor is it believed that more than a single instance can be found in which a new trial has been granted on the discovery of parol testimony. All the instances that have been adduced have been where some written document had been found which shewed that manifest injustice had been done. The case of *Fabritius* v. *Cook*, 3 *Bur.* 1771, is the only exception, and that was one in which the whole case was alleged to have been supported by perjury, and the court, after a very strict scrutiny, granted a new trial. Extreme cases of this kind ought never to furnish a precedent, unless where all the material circumstances are similar.

This evidence, even if admitted to be perfectly true in every respect, is nothing more than the recollection of a person who felt no interest in what was stated, and, of course, his recollection must be vague of a conversation which took place at a considerable distance of time. It does not establish the fact, that a mistake has actually been committed, but merely states circumstances from which this inference might possibly be drawn. If new trials were to be granted under circumstances of this nature, supported by this kind of evidence, no case would be terminated by a single verdict.

KINSEY C. J. The question before the court is, whether it has been made to appear that new evidence has been discovered since the trial, material in its character, and shewing that injustice has been done to the defendant?

The important considerations, in all cases of this kind are, has justice been done ? and has the party been guilty of no negligence or omission from the consequences of which he is now desirous of escaping ?   If these are the real questions, I do not think that any difficulty can arise from the circumstance, that the new evidence, which it is desired to introduce, is oral, except so far as regards the credibility of different kinds of testimony.   If it can be made to appear, by parol evidence, that a new trial ought to be granted, I should not hesitate in allowing it, though testimony of this kind, as it is much more easily fabricated, ought to be examined with more strictness.   The case of *Fabritius* v. *Cook*, shews that there is no foundation for this distinction.

What then is the case which the defendant has laid before us, as the ground of this application ?   He swears, that since the trial, he has discovered new and important testimony, and brings forward a witness who swears, that some years since he had a conversation with Jessup, in which the latter used expressions, from which the deponent thinks, that the credit given to Clinton was a private credit, with which Cook had no concern.

It appears, from my notes of the trial, that this fact was attempted to be proved ; that it was the subject of inquiry then ; that evidence was given to the jury on the point ; but that the fact was not made out.

In the partnership books, the various items of this account are charged to Clinton, and not to Jessup ; it has appeared, and the fact has been admitted in this discussion, that the books were kept by Cook himself, and no satisfactory explanation has been given of these circumstances, so strong against the fact now set up and relied on.   Blackwood, the witness, whose testimony is considered as so important, does not pretend to recollect the precise words employed by Jessup in the conversation which he undertakes to detail. He gives us rather his recollection of the substance of what he heard, the impressions which he received as to its import,

than the language itself that was used. It is scarcely necessary to remark upon the vagueness of such testimony, or the extreme difference which may be produced by the variation of a single word, or even syllable.

Regarded in this point of view, I cannot but think that the circumstances furnished by the defendant himself, the entries made by him in the books, are entitled to much more credit than the necessarily indistinct recollections of a conversation which had taken place at a remote period, and on a subject not likely to impress itself deeply upon the memory. It has not, therefore, been made to appear, that a new trial is necessary for the attainment of justice, and I am, therefore, of the opinion, that the defendant take nothing by his motion.

SMITH, J., and KIRKPATRICK, J., concurred with the Chief Justice.

BOUDINOT, J. Some difficulty has occurred in this case, from the want of a particular state or report of the case which ought to have been applied for when the circumstances were fresh in the recollection of the judges before whom it was tried. It however appears to my satisfaction, that the plaintiff and defendant were jointly concerned in a store, in which Cook was the acting partner and book-keeper ; that one Clinton, a shipcarpenter, in the employ of Jessup, contracted, on his own account, a debt to a considerable amount in the store ; that Cook opened the account, and charged the different articles which Clinton had, to him, as the immediate debtor of the firm, without mentioning the plaintiff's name, as in any manner responsible. There was, in addition to this, a private account between Jessup and the partnership, in which no entry is made of a single article furnished to Clinton. At the trial of the cause, one of the principal questions contested between the parties was, upon whom the loss should fall which had been

occasioned by the insolvency of Clinton ? whether it should be charged jointly to the concern ? or whether it was to be borne exclusively by the plaintiff ? Evidence was adduced by both parties, and it was settled by the jury. Since the trial, the defendant now insists, that he has discovered a witness who can throw more light upon the question, by stating what he has heard the plaintiff himself state upon the subject, and therefore he applies to have the former verdict set aside.

I am against this application, for these reasons—1. That as the defendant himself kept the books, and charged the different items in the account to Clinton, as the debtor of the partnership, I should think it highly questionable, at least, whether upon a trial before a jury, he ought to be permitted to come forward with oral testimony, detailing a loose conversation, and contradicting this higher evidence furnished by his own conduct.

2. As at the trial both parties adduced evidence to this particular point, I think it would be introducing a new rule, and establishing an extremely bad precedent, to set aside the verdict and grant a new trial, because one party has since discovered evidence which he thinks entitled to more weight than any which he had produced at the trial. The jury may very probably have thought that all parol testimony ought to be disregarded, when set in opposition to the continued and deliberate acts of the defendant himself; and I cannot bring myself to dissent from this doctrine.

If the law were established according to the views of the defendant, not one verdict in ten would stand. Some corroborating evidence may always be found or made, and, in deviating from the rules by which courts have heretofore been guided, the trial by jury would become the most precarious of all trials. I am, therefore, against the motion.

Rule discharged.